IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| MaKesha Michelle Smith, | Case No. 6:12-cv-02533-TMC-JDA |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| | **OF MAGISTRATE JUDGE** |
| St. Francis Hospital, JoAnn Taylor, and Shauna Green, | |
| Defendants.[1] | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 73.] Plaintiff is proceeding pro se. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed by individuals proceeding pro se and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff filed this action on September 4, 2012, alleging a violation of the Family Medical Leave Act ("FMLA"). [Doc. 1.] Plaintiff seeks to recover medical costs, PTO, lost wages, living expenses until employment is obtained, and at least $10,000 for pain in addition to an apology. [*Id.* at 5.]

On April 29, 2007, Plaintiff applied for a Laboratory Assistant position at Bon Secours St. Francis Health System ("St. Francis"). [Doc. 73-2 at 91–96.] St. Francis offered Plaintiff a Laboratory Assistant position on May 1, 2007, with a base pay rate of $10.23 per hour. [*Id.* at 97–98.] When Plaintiff began working for St. Francis, she worked

---

[1] Defendant Anthony J. Marcavage was dismissed on July 31, 2013. [Doc. 79.]

on an as-needed basis at the Downtown location,[2] typically on the 1:00 p.m. to 9:00 p.m. shift.[3]  [*Id.* at 4:23–5:11; 7:7–10.]  However, occasionally, laboratory employees were moved from their assigned locations to other locations based on scheduling or staffing issues.  [*Id.* at 7:11–25.]

When she was hired, Plaintiff received a copy of an employee handbook [*id.* at 10:6–9], and Plaintiff signed an Employee Acknowledgment of Receipt and Understanding of Employee Handbook on May 15, 2007 [*id.* at 99].  Additionally, Plaintiff attended an orientation covering the policies of St. Francis and the employee handbook.  [*Id.* at 10:13–23.]  The attendance policy was covered during the orientation.  [*Id.* at 12:12–24.]  Under the attendance policy, a scheduled absence was one that was approved and requested in advance.[4]  [*Id.* at 101.]  Scheduled absences did not count toward absenteeism.  [*Id.*]  An unscheduled absence was one that was not requested in advance; unscheduled absences did count toward absenteeism.  [*Id.*]  Employees were considered tardy if they reported to their scheduled work areas more than five minutes after the scheduled start time.[5]  [*Id.* at 102.]  More than six unscheduled absences per year was

---

[2] St. Francis has three different locations where laboratory employees work—the Downtown location, the Eastside location, and the Millenium location.  [Doc. 73-2 at 6:21–7:6.]

[3] After about a year, Plaintiff changed from working on an as-needed basis to regular full time, remaining on the 1:00 p.m. to 9:00 p.m. shift.  [Doc. 73-2 at 5:12–6:5.]

[4] The attendance policy was implemented in August 2004 and revised in November 2008.  [Doc. 73-2 at 100–05 (indicating the November 2008 revision changed the format and added abbreviations and scope).]

[5] The Court notes that Plaintiff argues employees were considered late after seven minutes rather than five minutes.  [Doc. 82 at 5.]  Additionally, the policy states

> The Time and Attendance System has a 7 minute grace period built into the calculation of payable hours to provide the employee with a "zone" of time where he/she will not be docked for lateness or paid for overtime where overtime does not exist.  The employee will be held accountable for tardiness [outside] the seven-minute grace period.

2

considered as excessive absenteeism. [*Id.*] Plaintiff understood this attendance policy. [*Id.* at 13:17–18:24.]

On May 5, 2010, Plaintiff received a verbal warning for tardies and unscheduled absences. [Doc. 86-1 at 2.] According to the employee counseling record, Plaintiff was tardy 55 times and had eight unscheduled absences between May 4, 2009 and May 4, 2010.[6] [*Id.*] Plaintiff signed the employee counseling record on May 10, 2010. [*Id.*] During the meeting to review the verbal warning, Shauna Green went over the attendance policy with Plaintiff and Plaintiff understood tardiness was an issue for which she could be disciplined. [*Id.* at 44:13–46:8.]

On October 11, 2010, Plaintiff received a written warning for tardies. [*Id.* at 134.] According to the employee counseling record, Plaintiff had fourteen occurrences since her

---

[Doc. 73-2 at 102.] Accordingly, the policy is somewhat confusing, but could be read to mean that the five-minute period applies to determine whether an employee is tardy for purposes of the attendance policy and any discipline associated with the attendance policy but the seven-minute period applies for purposes of determining hours for payroll. Construing all inferences in favor of the non-moving party, as it must, the Court will use the seven-minute period for purposes of this Report and Recommendation and anything the Court classifies as a "tardy" will refer to a shift where Plaintiff clocked in more than seven minutes late.

[6]The record before the Court includes a Time Detail log dating back only to January 1, 2010. [Doc. 73-2 at 110–22.] From January 1, 2010 through May 5, 2010, the date of Plaintiff's verbal warning, Plaintiff had at least ten unscheduled absences [*id.* at 110–112 (Time Detail log showing unscheduled absences on February 1, February 8, February 22, March 1, March 3, March 4, March 8, March 10, March 11, and March 22); *see also id.* at 80:21–81:14 (explaining that a "call off" would be considered an unscheduled absence)] and four tardies [*id.* (Time Detail log showing unexcused tardies on February 15, February 16, February 20, and April 25)].

verbal warning.[7]  [Doc. 73-2 at 134.]  Plaintiff signed the employee counseling record on October 12, 2010.  [*Id.*]

On November 2, 2010, Plaintiff requested leave under the FMLA to care for her child.  [*See id.* at 133.]  Plaintiff received a memorandum informing her that she was eligible for FMLA leave but that additional information was needed to determine whether her absence qualified as FMLA leave.  [*Id.*]  However, Plaintiff never had any paperwork filled out by a doctor.  [*Id.* at 102:20–103:1.]

On March 28, 2011, Plaintiff was suspended for three days for additional tardies.  [*Id.* at 135.]  According to the employee counseling record, Plaintiff was late eight times since her written warning.[8]  [*Id.*]  The employee counseling record indicated that additional occurrences would result in further disciplinary actions up to and including termination.  [*Id.*]  Plaintiff signed the employee counseling record on March 28, 2011.  [*Id.*]  During the meeting to review the suspension, Shauna Green and Joann Taylor discussed time and attendance with Plaintiff and told Plaintiff that if she could not get to work on time, she would be terminated.  [*Id.* at 77:5–79:10.]

---

[7] The Time Detail log lists one unscheduled absence [Doc. 73-2 at 114 (showing an unscheduled absence on August 2, 2010)] and twelve tardies [*id.* at 112–15 (showing an unexcused tardy on May 8 and unauthorized early-late punches on May 18, May 22, May 26, June 9, June 10, June 11, July 13, July 16, September 2, September 3, and October 5)].  The Court notes the discrepancy between the employee counseling record and the Time Detail log.  The Time Detail log includes other dates when Plaintiff was more than seven minutes late [*see, e.g., id.* at 113 (showing a clock-in time of 13:08 on June 16)] but because those dates are not specifically marked as "unexcused" or "unauthorized" on the Time Detail log, the Court construes the facts in favor of the non-moving party and only classifies dates marked with "unexcused" or "unauthorized" as tardies.

[8] The Time Detail log lists two unscheduled absences [Doc. 73-2 at 117–18 (showing unscheduled absences on January 11 and March 21)], though one of those absences was weather related, and seven tardies [*id.* (showing an unexcused tardy on February 28 and unauthorized early-late punches on January 24, February 17, February 21, February 24, March 22, and March 28)].  Again, the Time Detail log includes other dates when Plaintiff was more than seven minutes late [*see, e.g., id.* at 116 (showing a clock-in time of 13:08 on November 2)] but the Court only classifies dates marked with "unexcused" or "unauthorized" as tardies.

4

On June 6, 2011, Plaintiff requested leave under the FMLA for her own serious health condition. [*See id.* at 123–28.] Plaintiff returned paperwork from her doctor, indicating she was requesting leave for frequent doctors' visits and prenatal visits associated with her pregnancy and complications associated with her pregnancy. [*Id.* at 129–132.] Plaintiff's request for intermittent leave under the FMLA was approved on June 30, 2011, retroactive to June 10, 2011, the date Plaintiff's doctor completed the FMLA paperwork. [*Id.* at 145.]

On July 12, 2011, Plaintiff was terminated for continued tardiness. [*Id.* at 144.] According to the employee counseling record, Plaintiff was late four times since her suspension.[9] [*Id.*] Plaintiff refused to sign the employee counseling record [*id.*], but Plaintiff understood that she was being terminated for continued tardiness [*id.* at 89:2–17].

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could

---

[9]The Time Detail log lists five tardies [Doc. 73-2 at 120–21 (showing unauthorized early-late punches on June 2, June 20, June 22, July 4, and July 12)]. The last tardy occurred on the date of Plaintiff's termination meeting and is not reflected on the employee counseling record.

5

prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

Defendants argue they never interfered with nor retaliated against Plaintiff for taking FMLA leave.[10]  [Doc. 73-1 at 8–11.]  The Court agrees.

The FMLA creates two types of claims: (1) interference claims, where an employee asserts that her employer denied or otherwise interfered with her substantive rights under the FMLA, *see* 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, where an employee asserts that her employer discriminated against her because she engaged in activity protected by the FMLA, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").  Here, Plaintiff appears to bring a retaliation claim because she argues she was "moved back and forth [between St. Francis locations] for retaliation purposes" [Doc. 1 at 4] and appears to argue she was terminated because she took FMLA leave [*see* Doc. 1 at 3–5].

A retaliation claim under the FMLA is analyzed under the burden-shifting analysis that applies to a Title VII retaliation claim.  *See Laing v. Federal Express Corp.*, 703 F.3d 713, 718–719 (4th Cir. 2013); *Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560, 565–566 (D.S.C. 1997).  Pursuant to this framework, the employee bears the burden of establishing a prima facie case, showing (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the

---

[10]This is an FMLA case.  Although in her response memorandum, Plaintiff mentions the Americans with Disabilities Act ("ADA") [Doc. 82 at 1], a review of the Complaint reveals that Plaintiff alleges neither that she has a disability nor that she was discriminated or retaliated against in violation of the ADA.  Moreover, to the extent Plaintiff attempts to allege a race discrimination claim (*see* Doc. 1 at 4 ("They moved another caucasian female co-worker who had only been employed with them 3 months in the position I was approved for and needed)], the Complaint fails to allege facts sufficient to state a claim under Title VII.  Accordingly, the undersigned analyzes the case as one alleging a violation of the FMLA.

protected activity and the adverse action. *Mercer v. Arc of Prince Georges County, Inc.*, 532 F. App'x 392, 398 (4th Cir. 2013). Once a prima facie case has been presented, the employer has the burden of producing a nondiscriminatory reason for its actions. *Id.* If the employer can produce a nondiscriminatory reason for its actions, the employee must demonstrate that the proffered reason is pretext for FMLA retaliation. *Id.* (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)).

Plaintiff was exercising a protected right under the FMLA because she applied for and was granted intermittent leave. Additionally, Plaintiff was adversely affected by an employment decision when her employment relationship was terminated.[11] However, Plaintiff cannot establish that a causal connection existed between the protected activity and the adverse action because St. Francis began disciplining Plaintiff for violating the attendance policy well before Plaintiff applied for FMLA leave. Plaintiff was issued a verbal warning for tardies and unscheduled absences on May 5, 2010 [Doc. 86-1 at 2] and a written warning for tardies on October 11, 2010 [Doc. 73-2 at 134]. Plaintiff did not request FMLA leave until November 2, 2010.[12] [*Id.* at 133.] Plaintiff was suspended for three days

---

[11] The Court is not convinced that being moved back and forth between the Downtown and Eastside locations constitutes an adverse employment action because it did not change Plaintiff's salary, benefits, or opportunity for promotion. *See Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (holding that the elimination of an employee's former position and lateral transfer to a new position was not material and stating that determining whether a change to an employee's job constitutes an adverse employment action focuses on metrics like the employee's salary, benefits, and opportunity for promotion). However, even if moving between locations constitutes an adverse employment action, Plaintiff cannot establish a causal connection between her taking FMLA leave and being moved between locations because, just like Plaintiff was disciplined for attendance issues before she requested FMLA leave as discussed below, she was also moved between locations before she ever requested FMLA leave. [Doc. 73-2 at 81 (deposition excerpt where Plaintiff states she worked at the Eastside location on March 22, 2011).] Moreover, Plaintiff testified that when there was a staffing shortage at one location, lab assistants from another location might be sent to cover the short-staffed location. [*Id.* at 44–46.]

[12] Leave was not granted with respect to Plaintiff's first request for leave to care for her child because Plaintiff never turned in a medical certification from a doctor. [Doc. 73-2 at 102:20–103:1.]

on March 28, 2011 for tardies [*id.* at 135], and she was told at the time that if she could not get to work on time, she would be terminated [*id.* at 77:5–79:10].  Plaintiff did not request FMLA leave for her own health condition until June 10, 2011 [*id.* at 123–28], after Plaintiff had already been disciplined three times and issued a final warning.  Plaintiff's request for intermittent leave was granted [*id.* at 145], and Plaintiff continued to have unexcused tardies[13] [*id.* at 120–21 (showing unauthorized early-late punches on June 2, June 20, June 22, July 4, and July 12) and was terminated for continued tardiness on July 12, 2011 [*id.* at 144].  The FMLA "does not protect an employee on leave from an adverse employment decision that would have occurred had she not taken leave."  *Thompson v. Spartanburg Cnty.*, C/A No. 7:06-1248-HMH-WMC, 2007 WL 2477338, at *9 (D.S.C. Aug. 28, 2007); *see also Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005) (stating that "the FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge"); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (finding that "[i]f dismissal would have occurred regardless of the request for an FMLA leave, however, an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave").  Here, Plaintiff cannot establish a causal connection between her FMLA leave and her

---

[13]Plaintiff has put forth no evidence that these tardies were related to her need for intermittent FMLA leave.  Indeed, during the time Plaintiff was approved for intermittent leave under the FMLA, Plaintiff had four excused tardies due to appointments, which were covered by her FMLA leave. [Doc. 73-2 at 120 (showing Plaintiff clocked in late because of appointments on June 13, June 14, June 15, and June 16).]  Additionally, Plaintiff testified she did not have a doctor's appointment on June 22. [*Id.* at 143:8–12.]  In any event, Plaintiff had been warned that further occurrences would result in further disciplinary actions up to and including termination [*id.* at 135], and the first of these additional tardies occurred on June 2, before Plaintiff requested leave under the FMLA.

termination; therefore, Plaintiff has not set forth a prima facie case that she was terminated in retaliation for engaging in activity protected by the FMLA.[14]

## CONCLUSION

Wherefore, based on the foregoing, it is recommended that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

                                                s/Jacquelyn D. Austin
                                                United States Magistrate Judge

January 27, 2014
Greenville, South Carolina

---

[14] Even assuming Plaintiff could meet her prima facie case, Defendants have articulated a legitimate, non-discriminatory reason that Plaintiff was terminated—for continued tardiness. Plaintiff has failed to point to any evidence to demonstrate that this given reason is pretext for discrimination. She admits that she had previously received verbal and written warnings, been suspended, and received a final warning that she would be terminated if she continued being tardy. She was tardy on June 2, 2011 [Doc. 73-2 at 120], even before she requested leave under the FMLA on June 6, 2011. Therefore, Plaintiff has not demonstrated that Defendants' legitimate reason is pretext for discrimination.